UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY DERUBEIS<br>AND<br>MACLYN BURNS,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>WITTEN TECHNOLOGIES, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 04-11137 RWZ<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT AND ORIGINAL COUNTERCLAIM

COMES NOW the Defendant Witten Technologies, Inc. ("Witten") by and through its undersigned counsel, and answers the Complaint as follows:

### I. INTRODUCTION

Witten admits that Plaintiffs seek compensation from Witten, but deny that Plaintiffs are entitled to any compensation and further deny the remaining allegations of the Introduction in Plaintiffs' Complaint.

### II. THE PARTIES

1.　　Witten admits that Plaintiffs were employed by Witten from approximately May 10, 2000 until the Fall of 2003, but have insufficient information to either admit or deny their remaining allegations of ¶ 1 of Plaintiffs' Complaint.

2.　　Witten denies the allegations contained in ¶ 2 of Plaintiffs' Complaint. Witten is a Florida corporation, with an office at 35 Medford Street, Suite 306, Somerville, Massachusetts. Its principal office is located at 14205 Burnet Road, Suite 210, Austin, Texas.

3. Witten admits the allegations contained in ¶ 3 of Plaintiffs' Complaint.

### III. FACTS

4. Witten admits the allegations contained in ¶ 4 of Plaintiffs' Complaint.

5. Witten admits the allegations contained in ¶ 5 of Plaintiffs' Complaint.

6. Witten denies that Burns and DeRubeis were constructively discharged by Witten, but admit the remaining allegations contained in ¶ 6 of Plaintiffs' Complaint.

7. Witten can neither admit nor deny the allegation in ¶ 7a of Plaintiffs' Complaint as it is vague and unclear as to the meaning of "continued to deposit funds," but admit the allegations set forth in 7b, 7c, and 7d of Plaintiffs' Complaint.

8. Witten denies the allegations set forth in ¶ 8 of Plaintiffs' Complaint.

### IV. COUNT I
### BURNS' ALLEGATION OF BREACH OF CONTRACT BY WITTEN

9. Witten incorporates by reference hereto its answers to paragraphs 1 through 8 as if fully set forth herein.

10. Witten admits the allegations set forth in ¶ 10 of Plaintiffs' Complaint.

11. Witten denies the allegations set forth in ¶ 11 of Plaintiffs' Complaint.

12. Witten denies the allegations set forth in ¶ 12 of Plaintiffs' Complaint.

13. Witten denies the allegations set forth in ¶ 13 of Plaintiffs' Complaint.

### V. COUNT II
### DERUBEIS' ALLEGATION OF BREACH OF CONTRACT BY WITTEN

14. Witten incorporates by reference hereto its answers to paragraphs 1 through 13 as if fully set forth herein.

15. Witten admits the allegations set forth in ¶ 15 of Plaintiffs' Complaint.

16. Witten denies the allegations set forth in ¶ 16 of Plaintiffs' Complaint.

17. Witten denies the allegations set forth in ¶ 17 of Plaintiffs' Complaint.

18. Witten denies the allegations set forth in ¶ 18 of Plaintiffs' Complaint.

### VI.  COUNT III
### BURNS ALLEGES VIOLATION OF M.G.L. CH. 149 SECTION 148

19. Witten incorporates by reference hereto its answers to paragraphs 1 through 18 as if fully set forth herein.

20. Witten denies the allegations set forth in ¶ 20 of Plaintiffs' Complaint.

21. Witten admits the allegations set forth in ¶ 21 of Plaintiffs' Complaint.

22. Witten denies the allegations set forth in ¶ 22 of Plaintiffs' Complaint.

### VII.  COUNT IV
### DERUBEIS ALLEGES VIOLATION OF M.G.L. CH. 149 SECTION 148

23. Witten incorporates by reference hereto its answers to paragraphs 1 through 22 as if fully set forth herein.

24. Witten denies the allegations set forth in ¶ 24 of Plaintiffs' Complaint.

25. Witten admits the allegations set forth in ¶ 25 of Plaintiffs' Complaint.

26. Witten denies the allegations set forth in ¶ 26 of Plaintiffs' Complaint.

### VIII.  AFFIRMATIVE DEFENSES

27. Plaintiffs have failed to state a cause of action upon which relief can be granted.

28. Plaintiffs have failed to mitigate their damages in that they have failed to make reasonable efforts to seek and find comparable employment.

29. Plaintiffs breached their employment agreements and therefore waive their right to claim relief under the agreements.

30. Witten's non performance under Plaintiffs' employment agreements, if any, is due to Witten's reasonable anticipation that Plaintiffs had, or were about to, breach the terms of their employment agreements.

31. Plaintiffs' claims are barred in whole or in part by Plaintiffs' own actions pursuant to the doctrines of waiver, laches and/or estoppel.

32. The statute of limitations has expired on each of Plaintiffs' claims.

33. There has been an accord and satisfaction as to one or more of Plaintiffs' claims.

34. Some or all compensation due, or otherwise owing, to Plaintiffs' in connection with their employment with Witten has been paid.

35. Plaintiffs' actions in misappropriating Witten's trade secrets constitutes illegality and unclean hands; accordingly, Plaintiffs have waived their claims under their employment agreement and under Massachusetts Wage Law.

36. Witten reserves the right to amend its answer and/or otherwise amend, modify, or add further affirmative defenses which become known after the filing of this pleading and or upon the completion of Discovery.

## IX.  WITTEN'S COUNTERCLAIMS

Defendant, Witten Technologies, Inc. ("Witten"), by counsel, asserts the following counterclaims against Plaintiffs, Anthony DeRubeis and Maclyn Burns and states as follows:

## NATURE OF THE CASE

1. This is an action for breach of contract, misappropriation of trade secrets and injunctive relief in connection with two engineers, formerly employed by Witten, taking confidential and proprietary information which is the property of Witten and appropriating that information for their own use and the use of Witten's competitor. Both employees were

instrumental in creating the confidential and proprietary software that is Witten's primary asset. Despite the confidentiality obligations imposed by employment agreements signed by both Plaintiffs (the "Employment Agreements"), both employees have taken Witten's unique 3-D subsurface imaging software and disclosed that confidential proprietary information to Witten's competitor and otherwise used it for their own benefit. Accordingly, Witten seeks damages for breach of the confidentiality provisions of the Employment Agreements and misappropriation of the trade secrets as well as injunctive relief enjoining the Plaintiffs from providing further services and trade secrets to Witten's competitor or otherwise improperly using Witten's confidential information.

## THE PARTIES

2. Witten is a Florida corporation, with an office at 35 Medford Street, Suite 306, Somerville, Massachusetts. Its principal office is located at 14205 Burnet Road, Suite 210, Austin, Texas. Currently, the company has fourteen employees.

3. Maclyn Burns ("Burns") and Anthony DeRubeis ("DeRubeis") (collectively, "Plaintiffs") are individual citizens of the State of Georgia, who were employed by Witten from approximately May 10, 2000 through the Fall of 2003.

## FACTUAL BACKGROUND

### The CART System

4. Witten Technologies, Inc. developed a ground penetrating imaging radar system that allows for the creation of high-resolution 3-D radar images of the shallow subsurface on a large scale. The system is called the Computer Assisted Radar Tomography System (the "CART System"). Witten's CART System includes both hardware and software. The hardware consists of a mobile piece of equipment that can be moved over a relatively large area of ground while

projecting radar beams into the earth and software to manage collection of the data generated. Data processing software then processes the data to produce a 3-D image of the subsurface conditions. The CART System allows for the location of subsurface objects, such as buried utilities, over thousands of square yards with a resolution of centimeters.

5. Witten is the only company that has created a commercially viable 3-D product. Thus, the CART System accurately determines the depth of an object or feature, which competitors currently are unable to offer. Witten also provides data with greater accuracy than competitors and its software possesses the ability, unmatched by competitors, to seamlessly integrate radar data into customer-required mapping configurations.

6. Witten has spent considerable effort and expense in developing the CART System. Witten developed the CART System to obtain an advantage over its competitors who did not use large-scale 3-D imaging and whose products are otherwise less attractive.

7. The CART System utilizes a highly confidential and proprietary combination of hardware and software and which is not a matter of public knowledge or general knowledge within the industry.

8. The CART System is the primary asset of the company, and Witten consistently treats the relevant technology as confidential trade secret information. For example, Witten requires employees to sign employment agreements that include a non-disclosure clause to protect all trade secrets and confidential information. In addition, Witten continually and consistently informs and reminds employees, both orally and in writing, that the software technology is confidential and proprietary information.

**<u>Burns and DeRubeis</u>**

  9.  In May 2000, Burns and DeRubeis were among the several employees hired by Witten when the company acquired significant technology, contracts and other assets. Both individuals are engineers by training with substantial technical skills and experience. Witten had no commercially viable product prior to the hiring of Burns and DeRubeis.

  10.  Initially, Burns and DeRubeis worked with Witten's chief scientist and assisted the chief scientist in developing this unique 3-D imaging software and integrating that software with Witten's existing CART hardware. Burns and DeRubeis were two of the five or six employees at Witten who had intimate knowledge of the construction and operation of the imaging software. During their employment, Burns and DeRubeis helped develop several new technologies that Witten patented. For example, Burns and DeRubeis were intimately involved in the successful development of the technology and method that allows for the exact positioning of the CART; and the development of the "stitching software" that "stitches" or joins together successive radar images taken by the CART System over a particular area into a large, unified map.

  11.  Witten was ultimately successful in developing its commercially viable CART System. After the commercialization of the CART System, Burns and DeRubeis assumed different roles within the company. Specifically, they became the Vice President of Sales and Vice President of Operations.

  12.  On April 25, 2000, Witten and DeRubeis entered into an Employment Agreement attached hereto as Exhibit 1.

  13.  On April 25, 2000, Burns entered into a similar Employment Agreement with Witten attached hereto as Exhibit 2.

14. The Employment Agreements expressly provide that both Burns and DeRubeis were hired to provide professional services related to the development or improvement of technology for mapping and imaging the subsurface.

15. On or about December 15, 2002, Witten agreed to extend the terms of the Employment Agreements with both Burns and DeRubeis. (*See*, Letters from Michael Oristaglio attached hereto as Exhibit 3).

16. The Employment Agreements contain a Confidentiality provision which provides as follows:

> You agree to hold for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its affiliates and their respective businesses which shall have been obtained by you during your employment with the Company and which shall not be or become public knowledge (other than acts by you or representatives of you in violation of this Agreement). You agree that you will not, without the prior written consent of the Company or as may be otherwise required by law or legal process, communicate or divulge any such secret or confidential information, knowledge or data relating to the Company or any of its affiliates and their respective businesses to anyone other than the Company and those designated by it.

Employment Agreement at ¶ 11.

17. Beginning in May 2002, Burns and DeRubeis expressed their desires to leave Witten, secure a broad technology license from the company, and establish a CART services business independent of Witten. In the months prior to the expiration of their respective Employment Agreements, Burns and DeRubeis again requested a broad licensing agreement from Witten to freely use and market the CART System. The result of such an agreement would have been that Burns and DeRubeis would no longer be employed by Witten, but would have been permitted to make use of Witten's CART System for a broad range of applications.

18. Witten refused to agree to such a broad licensing agreement, but instead attempted to renegotiate Burns' and DeRubeis' respective Employment Agreements. Burns and

8

DeRubeis refused to enter into new employment agreements. Witten subsequently offered both Burns and DeRubeis a limited license agreement that would have allowed Burns and DeRubeis to use Witten's CART System in a manner comparable to other Witten licensees.

19. Burns and DeRubeis refused to accept the licensing agreement offered by Witten and, in the Fall of 2003, Plaintiffs terminated their employment with Witten. Upon their departure, both Burns and DeRubeis were specifically reminded of their continuing obligations under their respective Employment Agreements to keep their knowledge of the CART System technology and other Witten intellectual property confidential.

20. After leaving their positions with Witten, Burns and DeRubeis began providing services to Geophysical Survey Systems, Inc. ("GSSI") to assist GSSI in developing improvements to their 3-D imaging technology.

21. GSSI competes directly with Witten and has been a competitor of Witten at all relevant times. Similar to Witten, GSSI manufactures Ground Penetrating Radar Systems and Subsurface Interface Radar to provide electronic mapping of subsurface objects. However, GSSI has typically been a 2-D imaging vendor and has previously lacked the capability to provide commercially viable 3-D imaging to its customers. GSSI's product offerings also compare unfavorably with Witten's in other respects.

22. Upon terminating their employment with Witten, Plaintiffs violated the confidentiality provision of their Employment Agreements. On information and belief, Burns and DeRubeis misappropriated confidential information related to the CART System for their own benefit and for the purpose of disclosure to GSSI. Witten has learned that Burns and DeRubeis have been providing services to GSSI which require disclosure of Witten's confidential proprietary data and knowledge relating to the CART System.

23. Burns and DeRubeis have GSSI software and are actively making it better for GSSI. Burns and DeRubeis never requested nor received authorization to use or possess Witten's software and any effort to improve the GSSI software will inevitably require Burns and DeRubeis to utilize Witten's confidential proprietary information relating to that software.

24. GSSI now claims its software is compatible and will run on Witten hardware. Witten has never made its software or hardware available to GSSI.

25. GSSI's website currently advertises the company's capability to provide 3-D subsurface imaging by use of RADAN 5.0 for Windows. According to a recent printout of the website, GSSI's software has recently been upgraded and improved and provides: "The World's Most Advanced GPR Data Processing Software Just Got Better!" (A copy of relevant pages from GSSI's website is attached hereto as Exhibit 4).

## COUNT I
### (Breach of Contract)

26. Witten realleges and incorporates by reference the allegations of paragraphs 1 through 25 herein.

27. Burns and DeRubeis entered into valid and enforceable Employment Agreements with Witten which contained confidentiality provisions.

28. Burns and DeRubeis breached their respective confidentiality provisions by disclosing Witten's confidential information to GSSI.

29. As a result of the Plaintiffs' breaches, Witten has suffered damages.

WHEREFORE, Witten demands judgment against Burns and DeRubeis for damages, expenses, interest, costs, attorneys' fees, and such other relief as the Court deems just.

**COUNT II**
**(Misappropriation of Trade Secret)**

30. Witten realleges and incorporates by reference the allegations of paragraphs 1 through 29 herein.

31. Witten's CART System utilizes and contains proprietary and confidential trade secrets.

32. In connection with the confidentiality of the subsurface imaging technology, Witten actively pursued a course of conduct to maintain the confidentiality of the information. Witten's conduct included requiring employees to enter into a confidentiality agreement upon employment. Additionally, Witten clearly demonstrated its intention to keep secret the data relating to its imaging software by constantly admonishing employees, both orally and in writing, of the confidential and proprietary nature of the software data. The confidential information regarding the 3-D imaging software was not shared by Witten with others engaged in the same field.

33. On information and belief, Burns and DeRubeis misappropriated this technology for their own benefit and to aid GSSI in developing its own technology and capabilities in subsurface mapping and investigation. The information that Burns and DeRubeis acquired while employed with Witten and that, among other uses, is being provided to GSSI was not general knowledge known to GSSI or other companies in the industry. Instead, the information was a trade secret developed by Witten to gain a competitive advantage in subsurface terrain imaging.

WHEREFORE, Witten demands judgment against Burns and DeRubeis for damages, expenses, interest, costs, attorneys' fees, and such other relief as the Court deems just.

## COUNT III
## (Injunctive Relief)

34. Witten realleges and incorporates by reference the allegations of paragraphs 1 through 33 herein.

35. This is an action for preliminary and permanent injunctive relief.

36. Witten alleges underlying claims for breach of contract and misappropriation of trade secrets.

37. Witten will suffer irreparable harm if Burns and DeRubeis are allowed to continue using and providing to GSSI or others confidential and proprietary information and trade secrets gained during their employment with Witten.

38. Witten will suffer greater harm than Burns and DeRubeis if Plaintiffs are allowed to continue to possess Witten's confidential proprietary information and continue providing services and trade secrets to GSSI or others.

39. Granting a preliminary injunction in favor of Witten on this issue will serve the public interest in that it discourages individuals from obtaining confidential information from one employer and subsequently using that information to aid the employer's competitor. This protects invention, commercial enterprise and safeguards the standards of business ethics.

WHEREFORE, Witten respectfully requests that the Court enter an order:

a. Enjoining Burns and DeRubeis from disclosing any of Witten Technologies, Inc.'s confidential and proprietary information;

b. Enjoining Burns and DeRubeis from seeking or continuing employment with Geophysical Survey Systems, Inc.; and

c. Granting such other and further relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Witten hereby demands a trial by jury on all issues and claims so triable.

Dated this 11th day of June, 2004

Respectfully submitted,

/s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.
BBO #405760

/s/ Amy B. Royal, Esq.
Amy B. Royal, Esq.
BBO #647175
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Tel.: (413) 737-4753/Fax: (413) 787-1941

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Defendant's Answer to Plaintiffs' Complaint and Original Counterclaim* has been served upon Daniel M. Rabinovitz, Esq., Menard, Murphy & Walsh LLP, 60 State Street, 34th Floor, Boston, Massachusetts 02109 by first-class, U.S. mail, postage prepaid, and filed electronically, on June 11, 2004.

/s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.