

# SKOLER, ABBOTT & PRESSER, P.C.
*Exclusively Representing Management in Labor and Employment Law*

**Jay M. Presser**
JayPresser@skoler-abbott.com

FILED
CLERKS OFFICE

2004 JUN 15 P 12: 28

U.S. DISTRICT COURT
DISTRICT OF MASS

June 14, 2004

Civil Clerk's Office
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

          Re:  Anthony Derubeis, et al.
               vs.
               Witten Technologies, Inc.
               <u>Civil Action No. 04-11137 RWZ</u>

Dear Sir or Madam:

    Pursuant to Rule 81.1, enclosed please find the certified copies of the record from the Suffolk County Superior Court relative to the above-referenced action.

    Please call should you have any questions.

                      Very truly yours,

                      Jay M. Presser/amm

                      Jay M. Presser

JMP:amm

Enclosures

cc (w/encls.):  Daniel M. Rabinovitz, Esq.
                 G. Thomas Harper, Esq.
                 Gregg Gerlach, Esq.

Suite 2000 • One Monarch Place • Springfield, MA 01144 • 413-737-4753 • Fax 413-787-1941 • www.skoler-abbott.com
255 Park Avenue • Worcester, MA 01605 • 508-757-5335
Affiliate of Worklaw Network: The nationwide network of management labor and employment law firms.

*Suffolk Superior Civil #04-1719*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11137 RWZ

ANTHONY DERUBEIS
AND
MACLYN BURNS

    Plaintiffs

v.

WITTEN TECHNOLOGIES, INC.

    Defendant

CIVIL ACTION NO.

### NOTICE OF REMOVAL

TO:    THE HONORABLE JUDGE OF SAID COURT:

PLEASE TAKE NOTICE that Defendant, Witten Technologies, Inc. ("Witten") files this Notice of Removal pursuant to 28 U.S.C. § 1332 and Local Rule 81.1, and in support thereof shows the following:

1.    On or about April 21, 2004, Plaintiffs Anthony Derubeis ("Derubeis") and Maclyn Burns ("Burns") filed a civil action styled Anthony Derubeis and Maclyn Burns, Plaintiffs v. Witten Technologies, Inc., Defendant in the Superior Court of the Commonwealth of Massachusetts, in and for Suffolk County, Massachusetts.

2.    Witten was served a copy of the Summons and Plaintiff's Complaint on May 3, 2004 (A copy of the Summons and Complaint are attached hereto as Exhibit 1). This Notice of Removal is timely under 28 U.S.C. § 1446 in that it is filed within thirty (30) days of Wittens receipt thereof.

3.    As grounds for jurisdiction of this action, there exists diversity of citizenship between Plaintiffs and Witten. Upon information and belief, both Derubeis and Burns were, at

SKOLER, ABBOTT
& PRESSER, P.C.
ATTORNEYS AT LAW
ONE MONARCH PLACE
SUITE 2000
SPRINGFIELD, MA 01144
(413) 737-4753

the time that this action commenced, and still are residents of the State of Georgia (See, Plaintiff's Complaint, ¶1). Witten was, at the time this action commenced, and still is a Florida Corporation with its principal place of business in Boston, Massachusetts.

4. It appears from Plaintiff's Complaint that Plaintiffs each are claiming damages in an amount in excess of $75,000.00 exclusive of interest and costs.

Dated this 1st day of June, 2004

I HEREBY ATTEST AND CERTIFY ON
JUNE 4, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

ASSISTANT CLERK.

On Behalf of Defendant Witten Technologies, Inc.
Dated this 1st day of June, 2004

_____
Jay M. Presser, Esq.
BBO #405760
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Tel.: (413) 737-4753/Fax (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Notice of Removal has been served upon Daniel M. Rabinovitz, Esq., Menard, Murphy & Walsh LLP, 60 State Street, 34th Floor, Boston, Massachusetts 02109 by first-class, U.S. mail, postage prepaid, on June 1, 2004.

_____
Jay M. Presser, Esq.

SKOLER, ABBOTT
& PRESSER, P.C.
ATTORNEYS AT LAW
ONE MONARCH PLACE
SUITE 2000
SPRINGFIELD, MA 01144
(413) 737-4753

MAS-20030912                                                                                                                06/03/2004
guen                              **Commonwealth of Massachusetts**                                                         02:00 PM
                                  SUFFOLK SUPERIOR COURT
                                  Case Summary
                                  Civil Docket

### SUCV2004-01719
### Derubeis et al v Witten Technology Inc

| File Date | 04/21/2004 | Status | Disposed: transferred to other court (dtrans) |
|---|---|---|---|
| Status Date | 06/03/2004 | Session | F - Civil F |
| Origin | 1 | Case Type | A01 - Services, labor, materials |
| Lead Case | | Track | F |

| Service | 07/20/2004 | Answer | 09/18/2004 | Rule12/19/20 | 09/18/2004 |
|---|---|---|---|---|---|
| Rule 15 | 09/18/2004 | Discovery | 02/15/2005 | Rule 56 | 03/17/2005 |
| Final PTC | 04/16/2005 | Disposition | 06/15/2005 | Jury Trial | No |

**Plaintiff**
Anthony Derubeis
Active 04/21/2004

**Private Counsel 558419**
Daniel M Rabinovitz
Menard Murphy & Walsh
60 State Street
34th floor
Boston, MA 02
Phone: 617-832-2500
Fax: 617-832-2550
Active 04/21/2004 Notify

**Plaintiff**
Maclyn Burns
Active 04/21/2004

**Defendant**
Witten Technology Inc
Served: 05/03/2004
Served (answr pending) 06/01/2004

**Private Counsel 405760**
Jay M Presser
Skoler Abbott & Presser PC
1 Monarch Place
Suite 2000
Springfield, MA 01144
Phone: 413-737-4753
Fax: 413-787-1941
Active 06/03/2004 Notify

| Date | Paper | Text |
|---|---|---|
| 04/21/2004 | 1.0 | Complaint (Business) |
| 04/21/2004 | | Origin 1, Type BA2, Track B. |
| 04/21/2004 | 2.0 | Civil action cover sheet filed |
| 04/22/2004 | 3.0 | Notice of Denial of Acceptance Into the Business Litigation Session (Allan vanGestel, Justice) Notice sent 4/22/04 |
| 04/26/2004 | | Civil action cover sheet mailed re: complaint |
| 04/29/2004 | 4.0 | Civil action cover sheet returned re: complaint |
| 04/29/2004 | | Track changed to F, Origin 1, Type A01. |
| 06/01/2004 | 5.0 | SERVICE RETURNED: Witten Technology Inc(Defendant) (In hand on 5/3/04) |

MAS-20030912  Case 1:04-cv-11137-RWZ   Document 6   Filed 06/15/2004   Page 5 of 19   06/03/2004
guen                    Commonwealth of Massachusetts                                 02:00 PM
                            SUFFOLK SUPERIOR COURT
                                  Case Summary
                                  Civil Docket

# SUCV2004-01719
## Derubeis et al v Witten Technology Inc

| Date | Paper | Text |
|---|---|---|
| 06/03/2004 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. Witten Technologies, Inc. U. S. Dist.#(04-11137RWZ). |
| 06/03/2004 | | Case REMOVED this date to US District Court of Massachusetts |

EVENTS

I HEREBY ATTEST AND CERTIFY ON

JUNE 4, 2004, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

By /s/ Lorraine A. Antos

ASSISTANT CLERK.

**1**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                           SUPERIOR COURT
                                                       CIVIL ACTION NO.
                                                       04-1719

ANTHONY DERUBEIS )
AND )
MACLYN BURNS )
    Plaintiffs, )
 )
v. )
 )
Witten Technologies Inc. )
    Defendant. )

**COMPLAINT AND JURY DEMAND**

**I.  INTRODUCTION**

This complaint seeks compensation on behalf of the plaintiffs, Maclyn Burns and Anthony DeRubeis, for the defendant's, Witten Technologies Inc.'s, breach of a written employment contract and the wages owed to the plaintiffs under that contract. Specifically, plaintiffs are owed approximately $49,454.69 and $44,672.87, respectively, for past wages and benefits enumerated in plaintiffs' written employment contract. In addition, pursuant to Massachusetts General Laws Chapter 149: Sections 148 plaintiffs are entitled to an award of treble damages and reasonable attorney fees.

**II. THE PARTIES**

1.  Maclyn Burns ("Burns") and Anthony DeRubeis ("DeRubeis") are individuals currently residing in the State of Georgia, who were employed by Witten Technologies Inc. from approximately May 10, 2000 through the Fall of 2003.

1

2. Witten Technologies Inc. ("Witten") is a Florida corporation, with offices located at 295 Huntington Avenue in Boston, Massachusetts, County of Suffolk.

3. Pursuant to the Employment Agreements executed by the parties (the "Contract" attached hereto as Exhibit A), the employment relationship was "governed by the laws of the State of Massachusetts without regard to its principles of conflicts of law." (Employment Agreement Paragraph 14)

### III. FACTS

4. Witten hired Burns and DeRubeis on or about May 10, 20 2000, by entering into the Contract.

5. Thereafter, on or about December 15, 2002, the term of the Contract was extended. (See Letter from Michael Orisaglio attached hereto as Exhibit B).

6. On approximately November of 2003, Burns and DeRubeis were constructively discharged by Witten, without cause. At that time, the Contract was still in effect.

7. Among Witten's contractual obligations were:

   a. The obligation to continue to deposit funds into their 401k accounts;

   b. The obligation to provide paid vacation;

   c. The obligation to provide a car allowance of $400 per month;

   d. The obligation to deposit a lump sum equal to 17 % of monthly salary less benefits into their 401k account.

8. To date, Witten has failed and refused to pay Messrs. Burns and DeRubeis the following items, which have been due and owing for months:

| Item | Burns | DeRubeis |
|---|---|---|
| 401k on the last week worked in 2003 (Nov 21 paycheck) | $261.54 | $261.54 |
| Vacation payout | $6083.85 | $4126.73 |
| Car Allowance | $16,800.00 | $16,800.00 |
| Back Pay Not Yet Paid | $ 615.39 | |
| 17% 401k Lump Sum due from salary already paid | $25,693.91 | $23,484.60 |
| Total Owed | $49,454.69 | $44,672.87 |

## COUNT I
## BREACH OF BURNS' CONTRACT
## BY WITTEN

9. Burns and DeRubeis repeat and re-allege each and every allegation set forth in paragraphs 1-8 and incorporates the same herein.

10. Burns and Witten entered into a legally binding contract, supported by consideration.

11. Burns fully performed all of his obligations under the Contract.

12. By failing to pay Burns the amounts set forth in paragraph 8, Witten has breached the contract.

13. As a direct and proximate result of Witten's action, Burns has been injured in an amount to be proven at trial, not less than $49,454.69.

3

## COUNT II
## BREACH OF DERUBEIS' CONTRACT
## BY WITTEN

14. Burns and DeRubeis repeat and re-allege each and every allegation set forth in paragraphs 1-13 and incorporates the same herein.

15. DeRubeis and Witten entered into a legally binding contract, supported by consideration.

16. DeRubeis fully performed all of his obligations under the Contract.

17. By failing to pay DeRubeis the amounts set forth in paragraph 8, Witten has breached the contract.

18. As a direct and proximate result of Witten's action, DeRubeis has been injured in an amount to be proven at trial, not less than $44,672.87.

## COUNT III
## VIOLATION OF M.G.L. 149 SECTION 148
## BY WITTEN AGAINST BURNS

19. Burns and DeRubeis repeat and re-allege each and every allegation set forth in paragraphs 1-18 and incorporates the same herein.

20. Witten's conduct as more fully described above constitutes a breach of M.G. L.Ch.149: Section 148.

21. Pursuant to M.G. L.Ch.149: Section 150, the Massachusetts Office of Attorney General has authorized Burns to bring this claim as a private right of action (See Exhibit C).

22. As a direct and proximate result of Witten's action, Burns has been injured in an amount to be proven at trial, not less than $49,454.69 and pursuant to M.G. L.Ch.149: Section 150 Burns is entitled to an award of treble damages, in the amount of $148,340, plus interest and reasonable attorney's fees.

## COUNT IV
### VIOLATION OF M.G.L. 149 SECTION 148
### BY WITTEN AGAINST DERUBEIS

23. Burns and DeRubeis repeat and re-allege each and every allegation set forth in paragraphs 1-22 and incorporates the same herein.

24. Witten's conduct as more fully described above constitutes a breach of M.G. L.Ch.149: Section 148.

25. Pursuant to M.G. L.Ch.149: Section 150, the Massachusetts Office of Attorney General has authorized DeRubeis to bring this claim as a private right of action (See Exhibit C).

26. As a direct and proximate result of Witten's action, DeRubeis has been injured in an amount to be proven at trial, not less than $44,672.87 and pursuant to M.G. L.Ch.149: Section 150 DeRubeis is entitled to an award of treble damages, in the amount of $134,016, plus interest and reasonable attorney's fees.

Wherefore, the Plaintiffs pray that this Honorable Court:

1. Enter Judgment for Burns in the amount of $49,454.69.

2. Enter Judgment for DeRubeis in the amount of $44,672.87;

3. Enter Judgment pursuant to M.G. L.Ch.149: Section 150 for DeRubeis and award treble damages, in the amount of $134,016, plus interest and reasonable attorney's fees.

4. Enter Judgment pursuant to M.G. L.Ch.149: Section 150 for Burns and award treble damages, in the amount of $148,340, plus interest and reasonable attorney's fees.

5. Enter any other kind of relief this court deems just and fair.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues and claims so triable.

, HEREBY ATTEST AND CERTIFY ON
JUNE 4, 2004 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Dated: April 21, 2004

Respectfully submitted,

Maclyn Burns and Anthony DeRubeis
By their attorneys,

Daniel M. Rabinovitz BBO No. 558419
Menard, Murphy & Walsh LLP
60 State Street - 34th Floor
Boston Massachusetts 02109
(617) 832-2500

6

1 February 2000

Mr Anthony Derubeis
Danbury, Connecticut

Dear Mr Derubeis,

**WITTEN**
TECHNOLOGIES INC

It is a pleasure to offer you a position as Senior Engineer of Witten Technologies, Inc (the "Company") on the terms and conditions hereinafter set forth. In this position, you will be reporting to Michael Oristaglio, Chief Scientist. Your starting date is 1 March 2000.

The Company is a small, privately held company, which was incorporated in October 1994 in the State of Florida. The Company is involved in the development of methods for imaging the shallow subsurface (to depths of about 50 meters), including detecting and locating buried utilities and other objects located under the near surface of land or bottom of the ocean (the "Technology"). The Company is interested in all commercial applications of images and maps of the shallow subsurface, including engineering, construction, environmental assessment, archaeology, resource management, and law enforcement (the "Fields of Interest").

The following paragraphs set forth the terms of your employment with the Company:

2121 K STREET NW
SUITE 650
WASHINGTON, D.C.
20037
PHONE 202 728 2200
FAX 202 728 2210
WITTENINC@AOL.COM

1. *Compensation.* Your salary will be $80,000. per year, paid monthly. You will also receive a vehicle allowance of $400 per month. Barring a change in your position, your next salary review will be January 2002. You will receive 4 weeks paid vacation annually, sick days as medically necessary, all Federal holidays and two personal holidays.

2. *Location and Work.* The Company is engaging you and you agree to be engaged by the Company to provide professional services related to the development or improvement of Technology in the Fields of Interest. The Company's technology offices are currently located at 295 Huntington Avenue, Boston, Massachusetts 02115. The Company also has offices at 2121 K St NW, Washington, DC 20037.

   Recognizing that the Company's business, research, and development of technology does not require you to maintain a physical location at its offices during work, the Company allows flexible working hours and telecommuting. Recognizing that you are on salary, you agree to use your best efforts to respond to requests for your services by the Company and that you will have no other full-time employment that will limit your availability to provide services. Nevertheless, unless otherwise agreed in writing with the

1 February 2000

Mr Anthony Derubeis
Danbury, Connecticut

Dear Mr Derubeis,

**WITTEN**
TECHNOLOGIES INC

It is a pleasure to offer you a position as Senior Engineer of Witten Technologies, Inc (the "Company") on the terms and conditions hereinafter set forth. In this position, you will be reporting to Michael Oristaglio, Chief Scientist. Your starting date is 1 March 2000.

The Company is a small, privately held company, which was incorporated in October 1994 in the State of Florida. The Company is involved in the development of methods for imaging the shallow subsurface (to depths of about 50 meters), including detecting and locating buried utilities and other objects located under the near surface of land or bottom of the ocean (the "Technology"). The Company is interested in all commercial applications of images and maps of the shallow subsurface, including engineering, construction, environmental assessment, archaeology, resource management, and law enforcement (the "Fields of Interest").

The following paragraphs set forth the terms of your employment with the Company:

1. _Compensation_. Your salary will be $80,000 per year, paid monthly. You will also receive a vehicle allowance of $400 per month. Barring a change in your position, your next salary review will be January 2002. You will receive 4 weeks paid vacation annually, sick days as medically necessary, all Federal holidays and two personal holidays.

2121 K STREET NW
SUITE 650
WASHINGTON, D.C.
20037
PHONE 202 728 2200
FAX 202 728 2210
WITTENINC@AOL.COM

2. _Location and Work_. The Company is engaging you and you agree to be engaged by the Company to provide professional services related to the development or improvement of Technology in the Fields of Interest. The Company's technology offices are currently located at 295 Huntington Avenue, Boston, Massachusetts 02115. The Company also has offices at 2121 K St NW, Washington, DC 20037.

Recognizing that the Company's business, research, and development of technology does not require you to maintain a physical location at its offices during work, the Company allows flexible working hours and telecommuting. Recognizing that you are on salary, you agree to use your best efforts to respond to requests for your services by the Company and that you will have no other full-time employment that will limit your availability to provide services. Nevertheless, unless otherwise agreed in writing with the

**Derubeis**
**1 February 2000**
**Page 3**

your individual goals for the year and (b) a grant of up to 75% of your total eligible options will be based on the Company's performance against its business goals for the year. You and the Chief Scientist of the Company will determine your individual goals no later than March 15 of each year. You will also participate in setting the Company's business goals which will be published to all employees by March 31.

8. *Additional Payments*. You will be entitled to receive the following additional payments from the Company:

    (a) Within fifteen (15) days following the date you sell or otherwise dispose of any of the Initial Option Shares (including, without limitation, as a result of a liquidation), the Company shall pay to you an amount equal to $2 per Initial Option Share sold or otherwise disposed of at such time.

    (b) if Robert Green, Alan Witten, Anthony Devaney and/or Shane Green (the "Founders") sell or otherwise dispose of any of the 3,600,000 shares of common stock they currently hold in the Company (the "Founders Shares") in a fully or partially taxable transaction (including, without limitation, as a result of a liquidation) and are entitled to receive $2 or less per share, then, within fifteen (15) days following such sale or other disposition, the Company will pay to you an amount equal to the product of (x) the amount per share the Founders are entitled to receive from such sale or other disposition, (y) the number of your Initial Option Shares set forth in paragraph 6 above and (z) a fraction, the numerator of which is the number of Founders Shares sold or otherwise disposed of in the transaction and the denominator of which is the total number of Founder Shares.

    (c) The maximum amount you may receive in the aggregate under paragraphs (a) and (b) is $2 times the number of Initial Option Shares.

    (d) At the time of any payment to you under clause (a) or (b) above, the Company shall pay an additional amount equal to the product of (i) the amount received by you under clauses (a) and (b) above, and (ii) a fraction, the numerator of which is equal to the excess of the maximum marginal federal income tax rate imposed on ordinary income at such time (the "Ordinary Income Rate") over the maximum marginal federal income tax

Derubeis
1 February 2000
Page 4

rate imposed on long-term capital gains at such time, and the denominator of which is equal to one (1) less the Ordinary Income Rate.

(e) For purposes of this paragraph, the number of shares of Company stock and the price per share shall be equitably adjusted to reflect any stock splits, stock dividends, recapitalizations or similar transactions.

9. *Professional Activities.* The company recognizes that, as a engineer, your participation in scientific or engineering meetings and conferences and on academic or government review committees or panels is important to your professional development. The Company encourages your participation in such activities, provided they do not conflict with the Company's business. The Company agrees to reimburse reasonable and necessary expenses related to your participation in such activities in accordance with its customary policies. You agree to inform the Company of any requests for your participation.

The Company will also pay tuition, fees, and books for approved courses related to your employment.

10. *Project Discoveries.* During your employment with the Company, you agree to disclose promptly to the Company, or any person designated by it, any improvements, discoveries, inventions, whether patentable or not, trade secrets, formulae, processes, techniques, and other developments and advances using physical (e.g., electromagnetic, acoustic, gravity, nuclear, magnetic resonance) or chemical measurements in the Fields of Interest.

11. *Confidentiality.* You agree to hold for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its affiliates and their respective businesses, which shall have been obtained by you during your employment by the Company and which shall not be or become public knowledge (other than acts by you or representatives of you in violation of this Agreement). You agree that you will not, without the prior written consent of the Company or as may be otherwise required by law or legal process, communicate or divulge any such secret or confidential information, knowledge or data relating to the Company or any of its affiliates and their respective businesses to anyone other than the Company and those designated by it.

12. *Term.* Unless terminated earlier pursuant to the terms of this letter agreement, the term of your employment will be 24 months from the starting date, ie, from 1 March 2000 to 28 February 2001. The Company agrees to start negotiations with you in good faith on a

Derubeis
1 February 2000
Page 5

new employment agreement no later than 18 months following the starting date. If negotiations on the terms of a new employment agreement are not concluded by the end of the term, you will have the option of continuing your employment under the terms of this agreement for an additional 6 months.

In the event the Company terminates your employment without "Cause" (as defined below) or in the event of your death or Disability (as defined below) (a) during the first 12 months of employment with the Company, you will be entitled to receive a lump-sum payment equal to 12 months salary; or (b) after your first 12 months of employment, you will be entitled to receive a lump-sum payment equal to the remainder of the term of your contract or 6 months' salary, whichever is greater. In return for this consideration, you agree in the event of your termination by the Company without Cause not to accept employment or render service to any person engaged in a business directly competitive with the business then engaged in by the Company or any of its affiliates for a period starting at your termination date and ending that number of months after the termination of your employment that is equivalent to the number of months taken into account in computing your final lump sum payment (e.g., if your termination date is 1 January 2001 and your final lump-sum payment is 12 months salary, you will agree to refrain from competition with Company until 1 January 2002).

For purposes of this letter agreement, "Disability" means your inability, due to illness, accident or any other physical or mental incapacity, to substantially perform your duties for a period of ninety (90) consecutive days or for a total of one hundred fifty (150) days (whether or not consecutive) in any twelve (12) month period.

13. *Termination.* Except as otherwise provided herein, the Company shall have the right to terminate your employment only for Cause. "Cause" shall mean willful and persistent inattention to duties, any act amounting to gross negligence to the substantial detriment of the Company, intentional engaging in activity which is in direct conflict with the interests of the Company, willful and serious misconduct to the substantial detriment of the Company, acceptance of a position with another employer in contravention of this letter agreement without the consent of the Company, or any other substantial breach of any material term or provision of this agreement that is not cured within 10 days after written notice from the Company.

14. *Miscellaneous.* This letter agreement shall be governed by the laws of the State of Massachusetts without regard to its principles of conflicts of law. This letter agreement may be executed in one or more together will constitute one agreement. The rights and obligations of the Company hereunder may be assigned by the Company in connection with a sale of all or substantially all of the assets of the Company. This letter agreement

**Derubeis**
**1 February 2000**
**Page 6**

constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreement or understanding between them with respect to the subject matter hereof.

Please acknowledge your acceptance of this agreement by signing where indicated below.

Very truly yours

WITTEN TECHNOLOGIES

By _/s/ Robert Green_
Robert Green, President

ACKNOWLEDGED AND AGREED

_/s/_
Anthony Derubeis

Date  04/25/00

1 February 2000

Mr Maclyn Burns
Danbury, Connecticut

Dear Mr Burns,

**WITTEN**
TECHNOLOGIES INC

It is a pleasure to offer you a position as Senior Engineer of Witten Technologies, Inc (the "Company") on the terms and conditions hereinafter set forth. In this position, you will be reporting to Michael Oristaglio, Chief Scientist. Your starting date is 1 March 2000.

The Company is a small, privately held company, which was incorporated in October 1994 in the State of Florida. The Company is involved in the development of methods for imaging the shallow subsurface (to depths of about 50 meters), including detecting and locating buried utilities and other objects located under the near surface of land or bottom of the ocean (the "Technology"). The Company is interested in all commercial applications of images and maps of the shallow subsurface, including engineering, construction, environmental assessment, archaeology, resource management, and law enforcement (the "Fields of Interest").

The following paragraphs set forth the terms of your employment with the Company:

1. *Compensation.* Your salary will be $80,000. per year, paid monthly. You will also receive a vehicle allowance of $400 per month. Barring a change in your position, your next salary review will be January 2002. You will receive 4 weeks paid vacation annually, sick days as medically necessary, all Federal holidays and two personal holidays.

2. *Location and Work.* The Company is engaging you and you agree to be engaged by the Company to provide professional services related to the development or improvement of Technology in the Fields of Interest. The Company's technology offices are currently located at 295 Huntington Avenue, Boston, Massachusetts 02115. The Company also has offices at 2121 K St NW, Washington, DC 20037.

Recognizing that the Company's business, research, and development of technology does not require you to maintain a physical location at its offices during work, the Company allows flexible working hours and telecommuting. Recognizing that you are on salary, you agree to use your best efforts to respond to requests for your services by the Company and that you will have no other full-time employment that will limit your availability to provide services. Nevertheless, unless otherwise agreed in writing with the

2121 K STREET, NW
SUITE 65C
WASHINGTON, D.C.
20037
PHONE 202 728 2200
FAX 202 728 2210
WITTENINC@ADL.COM

Burns
1 February 2000
Page 2

Chief Scientist of the Company, the Company expects that you will be physically present at one of its offices no fewer than 6 working days per month. The Company will reimburse you for all reasonable and necessary business expenses in accordance with its customary policies. During the term of your employment, this reimbursement will include expenses related to your travel and accommodation for the 6 working days per month that you are required to be present at one of the Company's offices.

3. *Relocation.* The Company will reimburse your expenses related to one relocation of your residence to be more convenient to the Company's offices, in accordance with its customary new employee relocation policy (attached).

4. *Benefits.* In addition to the salary set forth in paragraph 1 above, each month a sum equal to 17% of monthly salary will be accrued into your flexible benefits account, to be allocated according to your determination among (1) health care plans, (2) life and disability insurance plans, and (3) 401(k) plan. You will be asked to determine the amounts allocated to each plan within your first month of employment; these amounts will hold for the remainder of that calendar year. Near the end of each year there will be an open enrollment period of one month during which you can change the allocations for the next year.

As a regular full-time employee, you will be eligible to participate in any other benefit plans as established by the Company.

5. *Pension Plan.* You will be eligible to participate in a pension plan which will be established by the Company no later than January 1 of the year following its first receipt of revenues from commercial activities. Eligibility and vesting in the pension plan will be determined by your starting date (i.e., as if the plan had been in place at your starting date).

6. *Options.* On signing you will receive options to purchase 125,000 shares of the Company's Common Stock at a price of $2.00 per share under the terms of the attached Incentive Stock Option Agreement (the "Initial Option Shares"), which will be executed simultaneously with the execution of this letter agreement. The options granted under this paragraph 6 will not be subject to vesting.

7. *Performance-based Stock Incentive Plan.* You will be eligible immediately to participate in the Company's 2000 Stock Incentive Plan (attached). For each of your first 2 years of employment, the minimum number of options you will be eligible to be granted at the end of the year is 60,000 (as adjusted to reflect stock splits and other recapitalization events). The actual number granted will be based on your performance against your individual goals and the Company's performance against its business goals, as follows: (a) a grant of up to 25% of your total eligible options will be based on performance against